JERROLD K. GUBEN   3107-0
O'CONNOR PLAYDON & GUBEN LLP
Makai Tower, 24th Floor
733 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 524-8350
Facsimile: (808) 531-8628
jkg@opglaw.com

TINA L. COLMAN   8321-0
ALSTON HUNT FLOYD & ING
ASB Tower, 18th Floor
1001 Bishop Street
Honolulu, HI 96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591
tcolman@AHFI.com

Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>HONOLULU SYMPHONY SOCIETY,<br><br>Debtor. | Case No. 09-02978<br>(Chapter 11)<br><br>HONOLULU SYMPHONY SOCIETY'S MOTION TO EXTEND TIME TO FILE A PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT; EXHIBIT A<br><br>*Hearing:*<br>Date:   December 13, 2010<br>Time:   9:30 a.m.<br>Judge:  Honorable Robert J. Faris |

# HONOLULU SYMPHONY SOCIETY'S MOTION TO EXTEND TIME TO FILE A PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT; EXHIBIT A

On December 18, 2009, the Honolulu Symphony Society ("HSS") filed its petition for relief pursuant to 11 U.S.C. § 1101, et. seq. At the time of the filing, the Society's 2009 – 2010 performance season had been cancelled.

On April 12, 2010 after notice and hearing on the HSS's Motion to Extend the Exclusivity Period, this Court set an October 15, 2010 date for the HSS to file a Plan and Disclosure Statement.

Prior to October 15, 2010, the Musicians' Association of Hawaii Local No. 677, American Federal of Musicians ("Union") filed a Complaint with the National Labor Relations Board ("NLRB") with respect to certain activities of the HSS. See Exhibit A, Complaint filed with the NLRB.

While this Chapter 11 proceeded in this Court, HSS was represented by special labor counsel, before the NLRB.[1]

The issue before the NLRB involved the status of the Musicians and whether some or all of the Musicians had voluntarily resigned from HSS, had "publicly" resigned or relocated out of Hawaii. The HSS contended that the Musicians had "de facto" resigned because they were performing with other organizations, while other Musicians had resigned by "publicly" announcing their

---

[1] 11 U.S.C. § 362(b)(4). The stay did not apply to the NLRB proceedings.

resignation, while others had relocated outside Hawaii. The NLRB-brokered resolution of the resignation-issue is in the process of being finalized. The settlement is being submitted to the Union and HSS Board of Directors for approval.

The effect of the settlement of the NLRB charges, if approved by the Union and the HSS Board of Directors, could have a major impact on the Plan. The NLRB has proposed an approach whereby the claims of the Musicians would be waived. The Musicians' waiver would include the waiver of claims and liabilities, provided for in the CBA, including the recognition of back pay[2] and severance claims.[3] If the Musicians accept a waiver of their CBA-related claims for back pay and severance as part of the NLRB-Settlement, this would reduce, if not totally eliminate, a potentially large administrative claim in favor of the individual Musicians, which HSS could not pay under § 1129(a)(9)(A).

---

[2] Without a definitive court interpretation, the CBA is unclear whether the Musicians are entitled to compensation if they don't play. Nothing in the CBA precludes the Musicians from claiming that they are entitled to their weekly pay, even if they don't play, since it was HSS which cancelled the season and prevented the Musicians, who were, in large numbers, ready, willing and able to play and fulfill the terms of the CBA. If the Union does not waive these potential "back pay" claims, it could be an issue in the Plan and create a substantial claim.

[3] As to the severance payments, under the CBA, the musicians are eligible for severance pay when their personal contract is terminated by the employer HSS, for any reason except for gross misconduct. When HSS accepted the resignation of a Musician, no severance pay was applicable. Musicians who have taken other positions or relocated out of Hawaii, could argue that they were "constructively discharged" by HSS and apply for severance pay.

If the Union does not waive these claims, they could be raised in the context of a plan confirmation proceeding.

On the other hand, if the Musicians do not waive their 2009 – 2010 CBA administrative claims, under the 2009 – 2010 CBA, then the claims might have to be satisfied pursuant to 11 U.S.C. § 1129(a)(9)(A), which requires the payment of allowed administrative claims, in full, in cash, on the Effective Date of the Plan, unless the administrative claimant agrees to treatment other than provided for in the Code. While HSS's other claims as reported on the claims registry, are substantial, these pre-petition unsecured claims can be reduced or compromised.

The real issue in the Plan will be the treatment of the Musicians' post-petition claims, their entitlement to post-petition wages under the CBA and their entitlement to severance pay and other benefits under the CBA.

Prior to the filing of the NLRB complaint, HSS "accepted" the de facto resignation of the Musicians, arguing that since the Musicians had "resigned," by performing for competing orchestras, "publicly" announcing their resignations or leaving the Islands, they would not be entitled to the benefits of the CBA for the 2009 – 2010 period. The resolution of the "resignation," as presently structured in the proposed Settlement Agreement, provide that the Union waives the Musicians' claims and insures that HSS no longer has to recognize the Musicians' claims under the 2009 – 2010 CBA, as potential first priority administrative claims, should the Musicians raise these claims.

Under the various settlement scenarios:

(1) the Musicians might be entitled to administrative expense priority treatment of their claim for back pay and severance under the CBA. There are constructions and interpretations of the CBA, which would allow the Musicians to make claims under the CBA for 2009 – 2010. It would be unlikely that HSS could confirm a plan if the Musicians insist on an administrative priority claim for their back pay and severance as provided for in the CBA, because there is insufficient "cash" in the Estate to satisfy § 1129(a)(9)(A). Alternatively,

(2) if the Musicians' claims under the CBA are 11 U.S.C. §§ 502(g) and 365(g) claims, if the CBA is rejected under 11 U.S.C. § 1113, then the Musicians' claims are unsecured pre-petition claims and can be treated as a "garden variety" unsecured claim;

(3) if the Musicians' CBA claims are considered administrative priority claims, then if the Union follows the NLRB's suggestion that the Union/Musicians waive any and all actual or potential claims under the 2009 – 2010 CBA for back pay and severance, and the Musicians thereby agree to treatment other than provided for in Section 1129(a)(9)(A), then the proposal of a plan of reorganization might be possible.

At present, with the NLRB suggestion of the waiver of any and all potential administrative priority claims for their back pay and severance, which is still in the "proposed" form, since neither the HSS Board of Directors nor the

Union has approved the Settlement Agreement; HSS cannot determine how the Musicians' CBA claims must be treated under a Plan. At present there are three alternative treatments of the Musicians claims under the CBA, (1) as an administrative claim with section 1120(a)(9)(A)-treatment, (2) an unsecured claim if the CBA is rejected pursuant to section 1113, or (3) "waived" if the NLRB suggestion is accepted by the Union.

If the Musicians' claims are to be treated as administrative claims, it is highly unlikely that HSS could confirm a plan, which requires the outlay of a substantial amount of cash, on the effective date of the plan, to satisfy § 1129(a)(9)(A). Alternatively, if the Musicians insist on such treatment, then HSS may have to exercise its rights under 11 U.S.C. § 1113 and move to reject the CBA, and give the Musicians a pre-petition unsecured claim for the amount of the liability under the rejected CBA. Then, again, if the Musicians see that it is impossible to confirm a plan, requiring a cash payment for the allowed administrative claims, in cash, on the Effective Date, the Musicians may agree to treatment as proposed by the NLRB, and accept a complete waiver of their 2009 – 2010 administrative claims for back pay and severance.

At present, the resolution of the "resignation" issue has not yet been approved by the HSS Board of Directors or Union and HSS cannot submit a plan until the financial implications, if any, of the settlement are determined.

With so many contingencies and options and the final form of the NLRB suggested settlement, still to be approved by HSS Board of Directors and the Union, Honolulu Symphony Society requests an extension of time to file the Plan of Reorganization until the claims of the Musicians under the current collective bargaining agreement are resolved and the Symphony knows how the Musicians' potential claims for back pay and severance under the 2009 – 2010 CBA are to be treated in the Plan. Based on the above, the Debtor, Honolulu Symphony Society requests an extension of time until December 13, 2010 to file its plan of reorganization.

DATED: Honolulu, Hawaii, October 13, 2010.

JERROLD K. GUBEN
TINA L. COLMAN
Attorneys for Debtor
HONOLULU SYMPHONY SOCIETY

| INTERNET FORM NLRB-501 (2-08) | UNITED STATES OF AMERICA NATIONAL LABOR RELATIONS BOARD CHARGE AGAINST EMPLOYER (1st Amended) | FORM EXEMPT UNDER 44 U.S.C 3512 |
|---|---|---|
| | | DO NOT WRITE IN THIS SPACE |
| | | Case: 37-CA-8065   Date Filed: July 30, 2010 |

INSTRUCTIONS:
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

a. Name of Employer
Honolulu Symphony Society
(Honolulu Symphony Orchestra)

b. Tel. No. (808) 524-0815

c. Cell No.

d. Address (Street, city, state, and ZIP code)
875 Waimanu Street #614
Honolulu, HI 96813

e. Employer Representative
Kimberly Miyazawa Frank, Chair, Board of Directors
Majken Mechling, Executive Director

f. Fax No. (808) 589-2667

g. e-Mail
majken@honolulusymphony.com

h. Number of workers employed
85

i. Type of Establishment (factory, mine, wholesaler, etc.)
Symphony Orchestra

j. Identify principal product or service
orchestral performances and music education

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) (3), (5) _____ of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

In the past six months the above named employer by its agents and or supervisors has interfered with, restrained and coerced employees in the exercising of their rights guaranteed by the act by failing to bargain in good faith with the Union. Additionally, on or about July 13, 2010, the above named employer sent a letter to the Union (copy attached) stating, falsely that the Union had announced that is was organizing a new orchestra using the current musicians of the employer, that the Union is disclaiming interest, and that the employer is therefore accepting the resignations of the musicians. The letter is an attempt to terminate all of the members of the bargaining unit and avoid having to bargain with or otherwise deal with the union representing the musician employees of the employer in violation of Sections 7, 8(a) (3) and 8(a) (5) of the Act.

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
Musicians' Association of Hawaii, Local 677

4a. Address (Street and number, city, state, and ZIP code)
949 Kapiolani Blvd
Honolulu, HI 96814

4b. Tel. No. (808) 596-2121

4c. Cell No.

4d. Fax No. (808) 593-2526

4e. e-Mail

*RECEIVED NLRB SUBREGION 37  2010 JUL 29 PM 3 03  HONOLULU HAWAII*

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor organization)
American Federation of Musicians

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

By _[signature]_  Brien Matson, President
(signature of representative or person making charge) (Print/type name and title or office, if any)

Tel. No. (808) 596-2121
Office, if any, Cell No.
Fax No. (808) 593-2526
e-Mail preslocal677@aol.com

Address: 949 Kapiolani Blvd, Honolulu, HI 96814    July 29, 2010 (date)

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

Exhibit A