Paul J. Schwind 7627
2033 Nuuanu Avenue, Apt. 22-B
Honolulu, HI 96817-2532
Telephone: (808) 523-7614
E-Mail: schwang1@hawaii.rr.com



Creditor Pro Se

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re ) | Case No. 09-02978 |
| ) | (Chapter 11) |
| HONOLULU SYMPHONY ) | |
| SOCIETY, ) | DECLARATION OF PAUL J. |
| ) | SCHWIND IN OPPOSITION TO |
| Debtor. ) | HONOLULU SYMPHONY |
| ) | SOCIETY'S MOTION TO EXTEND |
| ) | TIME TO FILE A PLAN OF |
| ) | REORGANIZATION AND |
| ) | DISCLOSURE STATEMENT |
| ) | |
| ) | HEARING: |
| ) | Date: December 13, 2010 |
| ) | Time: 9:30 a.m. |
| ) | Judge: Honorable Robert J. Faris |

**DECLARATION OF PAUL J. SCHWIND IN OPPOSITION TO
HONOLULU SYMPHONY SOCIETY'S MOTION TO EXTEND TIME TO
FILE A PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT**

I, Paul J. Schwind, hereby declare as follows:

1. I have been a subscriber as well as a regular donor to the Honolulu

Symphony Society (the "Symphony" or "Society") for approximately 35 years. As an

amateur musician myself, I have a long-standing and deep interest in the Symphony's success, in particular that of its musicians. I am also an attorney, retired but still licensed to practice law in Federal and State Courts in Hawaii.

2. I make this Declaration in Opposition to Honolulu Symphony Society's Motion to Extend Time to File a Plan of Reorganization and Disclosure Statement (filed October 13, 2010).

3. Except as otherwise indicated, all of the facts set forth in this Declaration in Opposition are based upon my personal knowledge and belief, and my review of relevant law and documents. I am competent to testify to the matters herein set forth and, if called upon to do so, I could and would testify to the matters set forth herein.

4. On September 20, 2009, I was present at the Symphony's regular subscription concert during which its then-new Executive Director, Majken Mechling, announced from the stage her belief that the organization should have another 110 years. She assured the audience that top priority would be given to paying the musicians, and there was new determination that the Symphony would be a success.

5. On November 7, 2009, media accounts reported that, despite "decent" ticket sales, the Symphony had cancelled all its concerts through the end of 2009 and would file for bankruptcy protection. Accordingly, on November 12, 2009, I requested a refund in the amount of $642.06 for the face value of tickets I held for the remainder

of concerts in the 2009-2010 Symphony season. I received no acknowledgment or other response from the Symphony.

6. On December 18, 2009, the Symphony, as Debtor and Debtor-in-Possession ("Debtor"), filed its petition for reorganization under Chapter 11.

7. On March 3, 2010, I filed a Proof of Claim in this case for the amount of $642.06, representing the value of the tickets I held for concerts cancelled in the 2009-2010 Symphony season.

8. On March 16, 2010, the Symphony finally informed its subscribers of the cancellation of the 2009-2010 season and its filing for Chapter 11 protection, notifying subscribers of their right to file a proof of claim for the value of their tickets, while suggesting that subscribers could donate the price of their outstanding ticket purchases to the Society. Upon knowledge and belief, the March 16, 2010, letter was the last communication sent to subscribers by the Symphony.

9. On April 16, 2010, after notice and hearing, this Court filed its Order Denying Debtor's Motion to Extend Time of the Exclusivity Period to File a Plan of Reorganization (Motion filed on March 24, 2010). The docket text for April 12, 2010, indicates that the Debtor will file its Plan of Reorganization and Disclosure Statement ("reorganization plan") by October 15, 2010.

10. The Society's Motion to Extend Time to File a Plan of Reorganization and Disclosure Statement, filed October 13, 2010 (the "Motion"), asks at 7 for an extension only until December 13, 2010, the same date as the hearing on the Motion. Whether the Motion is granted or denied, the Symphony will, as a practical matter, have gained another 60 days to file its reorganization plan. This delay has effectively extended the period during which there is no live symphonic music, orchestral musicians are compelled to leave Hawaii to find work, and creditors are denied reimbursement of funds owed to them by the Debtor. Continued delay in submission of an acceptable plan threatens to jeopardize the very reorganization of the Symphony into a new and viable entity that arguably was the purpose of filing for Chapter 11 protection in the first place.

11. The Motion at 4 states that the "real" issue in the reorganization plan will be treatment of the musicians' post-petition claims, their entitlement to post-petition wages under the collective bargaining agreement ("CBA"), and their entitlement to severance pay and other benefits under the CBA. However, as of October 1, 2010 (the deadline the Court set on August 23 for filing administrative priority claims, and two weeks *before* the Motion was lodged on October 13), the musicians had filed no such claims for post-petition wages and severance pay under 11 U.S.C. § 1129(a) (9)(A).

12. Moreover, the musicians have withdrawn the unfair labor practice charge filed against the Society with the National Labor Relations Board ("NLRB") on July 30, 2010, as reported in the Honolulu Symphony Musicians' website ("News Story Correction", November 4, 2010). Although the Motion (at 3, n.2 and n.3) concedes that the musicians might have been eligible for back pay and severance when the Society cancelled the 2009-2010 season, this "issue" now seems to be moot given that no administrative claims were filed and the NLRB complaint was withdrawn.

13. As shown in the Society's monthly operating reports filed with the Court, there has been no income from fund-raising since March, 2010, when only $373.13 was raised. The Society's cash balance has ranged from $68,013.53 in March to only $10,008.60 in August.

14. Arguably, the reorganization plan could have contained contingency provisions to accommodate the various financial scenarios that would have arisen with or without the musicians' administrative priority claims, had they been timely filed. But month after month, the only "progress" made toward the plan is stated as "commencement of the renegotiation process of the collective bargaining agreement." In short, notwithstanding continued retention of a highly compensated Executive Director, the Society has failed to perform essential functions such as fund-raising and preparation of a plan during the pendency of Chapter 11 protection.

15. A successful reorganization of the Symphony requires the filing of a reorganization plan pursuant to Subchapter II of Chapter 11. The "real" issue in a properly prepared and credible plan is how to generate renewed confidence and trust among subscribers, ticket holders, and donors in management's ability and good faith efforts to resolve the present bankruptcy. Such confidence and trust is vitally important if the Symphony is to move forward toward future success.

16. There is support for live orchestral music in the community, as evidenced by the standing-room-only crowd at the Honolulu Symphony Musicians' concert at St. Andrews Cathedral on November 13, 2010. Former subscribers and donors, together with new audience members, can become core supporters of a revitalized Symphony once the reorganization process is underway under new management competent to mobilize that support.

17. Unfortunately, however, the Symphony seeks, for the second time, to delay submission of the reorganization plan. As indicated above, this delay is unjustified on grounds of prejudice to the interests of the creditors (including without limitation musicians, subscribers, and concert-goers); mootness; and inadequate performance by the Executive Director (and by extension, the Board of Directors to whom she reports).

18. The undersigned recognizes that absent an individual or entity ready, willing, and able to accept appointment as trustee by order of the Court for cause or in the interests of creditors, pursuant to 11 U.S.C. § 1104(a), it may be difficult if not impossible for the Court to expedite the preparation and filing of an alternative reorganization plan essential to the eventual revitalization of the Symphony.

19. Nevertheless, as a Symphony season subscriber and creditor *pro se* in this case, for the reasons given above, I respectfully request that the Court deny Honolulu Symphony Society's Motion to Extend Time to File a Plan of Reorganization and Disclosure Statement.

## 28 U.S.C. § 1746 DECLARATION

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed this 27th of November 2010.

_____
PAUL J. SCHWIND