ELIZABETH A. KANE  #4694
LAW OFFICE OF ELIZABETH A. KANE, LLC
P.O. BOX 1573
Honolulu, Hawaii 96806
Telephone:  (808) 525-6301
Facsimile:  (808) 525-6302
E-mail:  ekane@aloha.net

**Attorney for Richard A. Yanagi, Trustee**

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re: | ) | Bk. No. 09-2978 |
| | ) | (Chapter 7) |
| HONOLULU SYMPHONY | ) | |
| SOCIETY, | ) | DECLARATION OF RICHARD A. |
| | ) | YANAGI; EXHIBITS "1" THROUGH |
| Debtor. | ) | "4" |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

I, Richard A. Yanagi, Trustee, hereby declare under penalty of

perjury:

1.      I am the duly appointed and acting Trustee of the above-

referenced estate.

2.      I have read the Motion for: (1) Authority To Sell Personal

Property Of The Estate Free And Clear Of Liens; (2) Employ Heritage

Global Partners, Auctioneer; (3) Reimburse Auctioneer For Expenses Up To

$25,000 And Approve Compensation For Auctioneer; And (4) Approve

1

Bidding Procedures. To the best of my knowledge, all statements and representations therein are true.

3.     Attached hereto Exhibit "1" is a true and correct copy of my agreement with Heritage Global partners, as auctioneer, subject to this Court's approval.

4.     Attached hereto as Exhibit "2" is a description of the property to be sold, including a partial inventory of the same.

5.     Attached hereto as Exhibit "3" is a copy of a proposed Bid Form, to be executed by prospective bidders for the property.

6.     Attached hereto as Exhibit "4" is a copy of a proposed form of Order granting this motion, for the Court's consideration in advance of the hearing.

DATED:  Honolulu, Hawaii, February 16, 2011.


/s/ Richard A. Yanagi
RICHARD A. YANAGI
Trustee

EXHIBIT "1"



# EXCLUSIVE AUCTION AGREEMENT

This Exclusive Auction Agreement ("Agreement") is made as of February 7, 2011 ("Effective Date")

BETWEEN:

RICHARD A. YANAGI, Trustee
HONOLULU SYMPHONY SOCIETY
1136 Union Mall, Suite 301
Honolulu, Hawaii 96813
Telephone:  (808) 599-0399

("Seller"),

AND

Heritage Global Partners, a California corporation
Hacienda Del Mar
12625 High Bluff Drive Suite 211
San Diego, CA  92130
Attention:        Kirk Dove
Telephone:       (858) 847-0650
Fax:             (858) 847-0660

("Auctioneer")

WHEREAS, Seller wishes to sell certain assets of the bankruptcy estate by public auction, and Auctioneer has agreed to conduct a public auction on the terms and conditions set forth below;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are mutually acknowledged, Auctioneer and Seller agree as follows:

1. **BANKRUPTCY COURT APPROVAL**.  This Agreement is subject to, and shall not become effective, until it is approved by written order of the United States Bankruptcy Court in the above-mentioned proceeding upon such notice as may be required.  Trustee will promptly make application for approval of this Agreement in connection with the motion to approve the sale of the assets by public auction.

2. **AUCTION**:  Seller wishes to retain Auctioneer on an exclusive basis to market and conduct an auction (the "Auction") of the assets set forth on Exhibit A attached hereto (the "*Assets*").   Auctioneer shall meet all of the conditions required by the Office of the United States Trustee in order to conduct the auction.

3. **CONDUCT OF THE AUCTION**:  The Auction will be conducted as soon as practicable after the bankruptcy court approves the procedures for the sale.  At all times the Auction will be conducted at the agreed upon site and over the Internet using webcast technology. Seller agrees that Auctioneer *may* use the Honolulu Symphony Society name, street address and logo in its advertising in accordance with Auctioneer's customary practice, including on its Website as well as in any press release, solely to perform services under this Agreement.  Any property of the bankruptcy estate that is not being sold is

listed on Exhibit A as the Excluded Assets shall remain property of the bankruptcy estate and shall not be auctioned. Auctioneer shall not be responsible for the removal of the Excluded Assets.

**4. DISCLAIMERS OF WARRANTIES**: Auctioneer shall state both in its advertising for the Auction and at the Auction that all Assets are being sold "AS IS WHERE IS, AND WITH ALL FAULTS WITH NO REPRESENTATIONS MADE BY SELLER and with any additional disclaimers of warranty, including disclaimers of the warranties of merchantability and fitness for a particular purpose. Seller acknowledges and agrees that Auctioneer has no knowledge with respect to, and has no obligation to investigate, the merchantability or fitness for any particular use of any Asset.

**5. COMPENSATION**: Auctioneer shall charge a buyer's premium of 10% ("Buyer's Premium") in addition to the purchase price. The Buyer's Premium shall be paid directly to Trustee in addition to the purchase price and paid to Auctioneer by the Trustee per Section 8. Payment to the Auctioneer of such Buyer's Premium by the successful bidder is not dependent on any other service provided by the Auctioneer in connection with the Auction subsequent to the closing of the sale of the Assets. Seller shall not be liable to Auctioneer for Buyer's Premium in the event that any overbidder fails to live up to or perform under its overbid and complete a purchase.

**6. DUE DILIGENCE**. In connection with the sale, Seller intends to assemble due diligence information related to the Assets (the "Due Diligence Information") and deliver such Due Diligence Information to prospective bidders. Auctioneer shall assist Seller in gathering and compiling Due Diligence Information for prospective bidders.

**7. AUCTION EXPENSES:** After the closing from the proceeds of sale, Seller shall reimburse Auctioneer for its reasonable, actual out-of-pocket expenses related to conducting the auction, which expenses shall not exceed $25,000. In the event that Seller is unable to close on a sale, Auctioneer shall be entitled to assert an administrative claim against the bankruptcy estate for its out-of-pocket expenses related to the auction, which expenses shall not exceed $25,000.

Out-of-pocket expenses may include the following:

(a) Advertising and Direct Marketing: including digital photography of the Assets, print and electronic media production, creative services, ad placement fees, brochure and catalog production, telemarketing, data list purchases, fax and email advertising and postage incurred in connection with the Auction.

(b) Labor, Set-up and Removal. Auctioneer's actual expenses directly related to the set-up and removal of the assets.

(c) Travel and Lodging: Auctioneer's actual travel and lodging expenses directly related to the Auction.

**8. COLLECTION AND DISBURSEMENT OF AUCTION PROCEEDS:**

(a) Prior to the closing, Seller shall collect from the successful purchaser of the Assets, by wire transfer or in good funds, the gross proceeds, any applicable General Excise Tax and amounts due as the Buyer's Premium. Seller shall use funds collected to pay the Buyer's Premium to Auctioneer.

(b) No later than 30 calendar days after the Auction, Auctioneer shall also issue to Seller a Report of Sale showing, generally, a description of the marketing efforts performed by Auctioneer, list of all bidders and the actual bids at the auction and report on the accepted bid and closing of the sale. Seller shall file the Report of Sale with the Bankruptcy Court.

**9. ASSET TRANSPORTATION, SUBSEQUENT AUCTIONS AND RIGHT OF SURRENDER**: Auctioneer shall not be responsible for transporting the Assets transportation to the auction site or Leased

Premises prior to the Auction. The successful purchaser shall be responsible for removing the Assets from the Leased Premises. In the event that walls or other structures must be removed or modified to remove the Assets sold at the Auction, Auctioneer shall not be required to supervise or incur additional cost or expense to remove such Assets.

**10 ASSET REMOVAL**: Auctioneer shall not be responsible for rigging and shipping the Assets sold. Under no circumstances shall Auctioneer be responsible for any loss, damage or destruction associated with asset removal or disconnection, except to the extent that such loss damage or destruction results from the negligence of Auctioneer.

**11. INSURANCE**: Seller shall be solely responsible for maintaining adequate insurance coverage pertaining to the Assets and storage at the Leased Premises. If the Auction is to occur at the Leased Premises, Seller also shall maintain adequate liability insurance for the duration of the Auction and related activities. Auctioneer shall carry all workers' compensation insurance for Auctioneer's employees in compliance with all applicable state and local laws. If the Auction site shall not be at the Leased Premises, Auctioneer shall maintain adequate liability insurance for the duration of the Auction and related activities.

**12. DESTRUCTION OF ASSETS**: In the event of any loss, damage or destruction of any Assets prior to the closing, Auctioneer shall be entitled to assert an administrative claim against the bankruptcy estate for its direct expenses related to the auction except to the extent the loss, damage or destruction is the result of Auctioneer's negligence. The risk of loss shall transfer to the successful purchaser at the closing.

**13. USE OF PREMISES**:

(a) For the purposes of this Agreement, the "Leased Premises" shall mean a location to be determined by mutual agreement of Auctioneer and Seller. Seller authorizes Auctioneer and its representatives to enter upon and use the Leased Premises and will use his best efforts to provide access for Auctioneer to enter the Leased Premises for the purposes of (i) storing the Assets thereupon, (ii) preparing the Assets for sale, (iii) otherwise exhibiting the Assets to prospective purchasers, and (iv) for such other purposes as are reasonable and necessary to conduct the Auction. Seller agrees that Auctioneer shall not be charged a fee for the use of the Premises. Seller will use his best efforts to furnish utilities to the Leased Premises.

(b) Seller acknowledges and agrees that Auctioneer has no interest of any kind or nature in the Leased Premises, and that Auctioneer has no knowledge as to any previous use or occupancy of the Leased Premises. Seller acknowledges and agrees that Auctioneer shall not be responsible for damage or injury to the Leased Premises resulting from or arising in connection with the sale or removal of the Assets, except to the extent that such damage or injury is caused by Auctioneer's negligence.

**14. REPRESENTATIONS AND WARRANTIES:** Seller is the Chapter 7 trustee of the bankruptcy estate of Honolulu Symphony Society. Seller has not acquired the Assets for purposes of maintaining the same, but rather for the purpose of liquidating the same under the Bankruptcy Code and has hired Auctioneer to assist in the liquidation of the Assets. Due to the unique nature of the Bankruptcy proceedings, neither Seller nor Auctioneer have personally used the Assets and are unaware of the true condition of the Assets. Neither Seller not Auctioneer are able to make, shall not be required to make and shall not be deemed to have made, any representation or warranty whatsoever as to the physical condition of the Assets or as to the operative or proposed governmental laws and regulations to which the Assets may be subject. The purchase of the Assets must be solely on the basis of any purchaser's own review and investigation of the physical condition of the Assets, and the applicability and effect of any laws and regulations to which the Assets may be subject. Although Seller and Auctioneer may reasonably cooperate with any potential purchaser's inspection of the Assets and review of any documents affecting the Assets, neither Seller nor Auctioneer shall assume the risk that adverse matters may not have been disclosed by any potential purchaser's investigation. As a standard matter of practice involving properties conveyed from bankruptcy estates through court appointed administrators, Seller's

limited knowledge of the Assets as the trustee of a bankruptcy estate does not permit either Seller to sell the Assets other than in its present "AS IS" condition, subject to all faults. Accordingly, the Assets shall be sold "AS IS WHERE IS, AND WITH ALL FAULTS WITH NO REPRESENTATIONS MADE BY SELLER." Upon agreement to mutually acceptable terms of sale, Seller shall seek an Order of the Bankruptcy Court by which the Trustee will be empowered to convey the Assets to the purchaser free and clear of all liens and encumbrances.

15. **CONDITIONS TO AGREEMENT**: This Agreement is subject to the following conditions, and if any of such conditions are not met, this Agreement shall be null and void:

(a) Entry of an Order by the Bankruptcy Court authorizing the sale of the Assets free and clear of liens pursuant to Bankruptcy Code § 363(b) and (f);

(b) Entering into an agreement with the secured lenders asserting liens on the Assets consenting to the sale of the Assets;

(c) Entry of an Order by the Bankruptcy Court approving the auction procedures, including the date, time and place of the auction.

16. **DUTIES OF AUCTIONEER:** In performing services, Auctioneer will comply with the requirements of the Bankruptcy Code, Federal Rules of Bankruptcy Procedures and the of the United States Trustee. Auctioneer shall perform the following duties, among others, related to the auction:

(a) Auctioneer will perform the following services for Trustee:

(1) inventory the Assets;

(2) work with Seller in preparing the Assets for sale;

(3) Assist Seller in gathering information related to the Assets and distributing such information to potential purchasers;

(4) advertise the Assets for sale and advertise the date, time and place of the auction;

(5) conduct the auction;

(6) collect and pay all proceeds of sale to Trustee;

(7) collect and pay all applicable sales taxes due as a result of such sale to Trustee to remit to the appropriate taxing authorities;

(8) collect and pay to Trustee the Buyer's Premium;

(9) prepare a report after sale showing the name of the purchaser and the sales price of the property;

(10) locating and reserving a room for the auction if not held at the Leased Premises; and

(11) provide general auctioneer services to the estate.

**17. TECHNOLOGY DISCLAIMER: AUCTIONEER DOES NOT WARRANT THAT THE FUNCTIONS, FEATURES OR CONTENT CONTAINED IN THE WEBSITE, INCLUDING ANY THIRD-PARTY SOFTWARE, PRODUCTS OR OTHER MATERIALS USED IN CONNECTION WITH THE WEBSITE, WILL BE TIMELY, SECURE, UNINTERRUPTED OR ERROR-FREE, OR THAT DEFECTS WILL BE CORRECTED.**

**18. INDEPENDENT PARTIES**: This Agreement shall not be construed (i) to create a partnership or joint venture between Seller and Auctioneer, or (ii) to imply that Auctioneer is buying the assets of, or any interest in, Seller.

**19. COUNTERPARTS; FACSIMILE SIGNATURES**: This Agreement may be executed in any number of counterparts, each of which, when executed, will be deemed to be an original and all of which, when taken together, will be deemed to be but one and the same instrument. Delivering Signatures via facsimile shall be an acceptable means of executing] this Agreement, and signatures so delivered shall be fully binding on the signing party.

**20. GOVERNING LAW; JURISDICTION**: This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of Hawaii as applied to agreements made in Hawaii, without regard to choice *at* law principles. Each party consents to jurisdiction and service of process as provided in the Bankruptcy Code for any action or proceeding arising under this Agreement, and venue in any such action will lie in United States Bankruptcy Court for the District of Hawaii.

**21. SEVERABILITY**: The provisions of this Agreement shall be severable. Should any part, term or provision of this Agreement be construed by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, the legality, validity and enforceability of the remaining parts, terms and provisions shall not be affected thereby.

**22. COMPLETE AGREEMENT**: This Agreement constitutes the entire understanding between the parties and replaces any and all prior agreements related to the Auction This Agreement may not be modified or amended except in writing signed by both parties.

Seller:  Richard Yanagi, Trustee            Heritage Global Partners
F.E.I.N. _____            California Bond Number 6150320


By:      _____            By:      _____


Name: _____            Name: _____


Title:  _____            Title:  _____


Date:  _____            Date: _____